UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

        -against-

AIRBORNE WIRELESS NETWORK, et al.,

                              Defendants,

        -and-

TIM KABILAFKAS, in his capacity as trustee of the
TIM KABILAFKAS REVOCABLE TRUST
DATED JULY 24, 2001, AND MAGDALINE
KABILAFKAS, in her capacity as trustee of the
MAGDALINE KABILAFKAS 1989 TRUST
DATED MAY 27, 1989,

                              Relief Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/26/2024

No. 21 Civ. 01772 (CM)

**DECISION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR FINAL JUDGMENT**

McMahon, J.:

This is a Securities and Exchange Commission ("SEC") enforcement action brought

against Kalistratos Kabilafkas (referred to herein as Kabilafkas)[1] and related parties, including

his father Timoleon ("Tim") Kabilafkas, for orchestrating and carrying out a scheme to take

undisclosed control of a public company and profit by engaging in a "pump and dump." The

SEC alleges that Kabilafkas acquired control of Airborne Wireless Network ("Airborne,"

formerly known as Ample-Tee, Inc.) and gave millions of Airborne shares to his associates and

---

[1] Other members of the extended Kabilafkas (or Kabylafkas) family will be referred to by their first names; all
references to "Kabilafkas" mean the principal defendant in this case, Kalistratos Kabilafkas.

nominees. Kabilafkas then caused the company to purchase a patent relating to wireless internet technology in order to give Airborne a veneer of actually doing business in a popular startup industry. Between 2016 and 2018, Kabilafkas orchestrated the expenditure of massive amounts of corporate funds on promotional schemes designed to "pump" the price of the stock. During these campaigns, Kabilafkas, his nominees, and associates proceeded to "dump" their shares into the artificially inflated market.

Throughout the course of the scheme, which lasted from August 2015 until May 2018, Kabilafkas and his associates submitted documents containing false statements to Airborne's transfer agent, brokers, and investors. Moreover, Kabilafkas and his associates caused Airborne to file numerous false reports with the SEC — reports that failed to disclose who truly owned stock in and controlled Airborne and that made misrepresentations about certain transactions in which Airborne engaged.

In March 2021, the Commission sued Airborne Wireless Network, Kalistratos Kabilafkas, Timoleon Kabilafkas, Jack Edward Daniels, and four other individuals, as well as Relief Defendants the Tim Kabilafkas Revocable Trust ("TKRT") and the Magdaline Kabilafkas Revocable Trust ("MKRT"). Dkt. No. 1 ¶¶ 17–27.

On September 23, 2023, the Court granted the SEC's motion for summary judgment, finding that there was no genuine issue of fact that Defendants had violated the antifraud provisions of the federal securities laws. *See* Dkt. No. 238.

On March 15, 2024, the SEC moved for final judgment against Defendants Kalistratos Kabilafkas, Airborne Wireless Network, Timoleon Kabilafkas, Jack Edward Daniels, and Relief Defendants Timoleon Kabilafkas, in his capacity as trustee of the Tim Kabilafkas Revocable

2

Trust Dated July 24, 2001, and Magdaline Kabilafkas, in her capacity as trustee of the Magdaline

Kabilafkas 1989 Trust Dated May 27, 1989. The Commission asked the Court to enter an order:

- Permanently restraining and enjoining Defendants from violating, or committing future violations of, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5] and Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. 77q(a)];

- Permanently barring Kabilafkas, Tim Kabilafkas, and Daniels from participating in an offering of penny stocks, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)] and Section 20(g)(1) of the Securities Act [15 U.S.C. § 77t(g)][2];

- Permanently barring Daniels from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 78t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and

- Imposing disgorgement and pre-judgment interest thereon, and civil monetary penalties as set forth in the chart below. The disgorgement and pre-judgment interest amounts in the chart provided by the SEC include amounts that the SEC proposed each party should be held jointly and severally liable for with other Defendants and/or Relief Defendants.

| Party | Disgorgement | Pre-Judgment Interest ("PJI") | Penalty | Joint and Several Disgorgement & PJI |
|---|---|---|---|---|
| Kabilafkas | $44,007,530[3] | $12,438,514 | $21,239,053 | Yes, with:<br>• Airborne for $22,768,734<br>• Tim Kabilafkas in his individual capacity for $13,720,303<br>• Tim Kabilafkas, in his capacity as trustee to the TKRT for $11,031,144, and<br>• Magdaline Kabilafkas, in her capacity as the trustee |

---

[2] The SEC did not seek a separate injunction for violations of Section 20(a) of the Exchange Act against Kabilafkas or a penny stock bar against Airborne.

[3] In the SEC's Memorandum, Dkt. No. 263, it recommended Kalistratos Kabilafkas pay disgorgement in the amount of $44,007,787. In Reply, it reduced that amount by $257, Dkt. No. 279, p. 9, which equals $44,007,530.

| Party | Disgorgement | Pre-Judgment Interest ("PJI") | Penalty | Joint and Several Disgorgement & PJI |
|-------|--------------|-------------------------------|---------|--------------------------------------|
|  |  |  |  | to the MKRT for $265,000 |
| Airborne | $22,768,734 | $5,488,855 | $1,152,314 | Yes, with:<br>• Kabilafkas for the full amount, and<br>• Tim Kabilafkas, in his capacity as the trustee to the TKRT for $103,320 |
| Tim Kabilafkas | $13,720,303 | $4,489,438 | $460,928 | Yes, with:<br>• Kabilafkas for the full amount, and<br>• himself in his capacity as the trustee to the TKRT for $11,031,144 |
| Jack Daniels | 0 | 0 | $230,464 | N/A |
| TKRT | $11,031,144 | $3,609,515 | 0 | Yes, with:<br>• Kabilafkas and Tim Kabilafkas for the full amount, and<br>• Airborne for $103,320 |
| MKRT | $265,000 | $86,711 | 0 | Yes, with Kabilafkas for the full amount |

Dkt. No. 263.

For the reasons set forth below, the SEC's Motion for Final Judgment is GRANTED as it pertains to Defendants Kalistratos Kabilafkas, Airborne Wireless Network, Timoleon Kabilafkas, and Relief Defendants Timoleon Kabilafkas, in his capacity as trustee of the Tim Kabilafkas Revocable Trust Dated July 24, 2001, and Magdaline Kabilafkas, in her capacity as trustee of the Magdaline Kabilafkas 1989 Trust Dated May 27, 1989.

The Court enters a permanent injunction enjoining and restraining Defendants Kalistratos Kabilafkas, Airborne Wireless Network, and Timoleon Kabilafkas from violating, or committing future violations of, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act.

The Court enters a permanent injunction barring Defendants Kalistratos Kabilafkas and Timoleon Kabilafkas from participating in an offering of penny stocks, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)] and Section 20(g)(1) of the Securities Act [15 U.S.C. § 78u(d)(2)].

Judgment shall be entered against Kalistratos Kabilafkas in the amount of $44,007,530 in disgorgement, $12,438,514 in pre-judgment interest, and $21,239,053 in civil penalties. Joint and several liability shall be imposed on the disgorgement and pre-judgment interest with: (1) Airborne Wireless Network for $22,768,734; (2) Timoleon Kabilafkas in his individual capacity for $13,720,303; (3) Tim Kabilafkas in his capacity as trustee to the TKRT for $11,031,144; and (4) Magdaline Kabilafkas in her capacity as the trustee to the MKRT for $265,000.

Judgment shall be entered against Airborne Wireless Network in the amount of $22,768,734 in disgorgement, $5,488,855 in pre-judgment interest, and $1,152,314 in civil penalties. Joint and several liability shall be imposed on the disgorgement and pre-judgment interest with: (1) Kalistratos Kabilafkas for the full amount; and (2) Tim Kabilafkas in his capacity as trustee to the TKRT for $103,320.

Judgment shall be entered against Timoleon Kabilafkas in his individual capacity in the amount of $13,720,303 in disgorgement, $4,489,438 in pre-judgment interest, and $460,928 in

civil penalties. Joint and several liability shall be imposed on the disgorgement and pre-judgment interest with (1) Kalistratos Kabilafkas for the full amount; and (2) Timoleon Kabilafkas in his capacity as the trustee to the TKRT for $11,031,144.

Judgment shall be entered against Relief Defendant Timoleon Kabilafkas in his capacity as the trustee to the TKRT in the amount of $11,031,144 in disgorgement and $3,609,515 in pre-judgment interest. Joint and several liability shall be imposed on the disgorgement and pre-judgment interest with: (1) Kalistratos Kabilafkas and Timoleon Kabilafkas for the full amount; and (2) Airborne Wireless Network for $103,320.

Judgment shall be entered against Relief Defendant Magdaline Kabilafkas in her capacity as the trustee to the MKRT in the amount of $265,000 in disgorgement and $86,711 in civil penalties. Joint and several liability shall be imposed on the disgorgement and pre-judgment interest with Kalistratos Kabilafkas for the full amount.

The Court reserves judgment on the SEC's Motion for Final Judgment and this action is STAYED as it pertains to Defendant Jack Edward Daniels until a parallel criminal proceeding, *United States v. Kabilafkas*, 24-CR-000270 (C.D. Cal.) (the "Criminal Action"), is concluded.

## BACKGROUND

### I. Factual Background

The court has already granted summary judgment against all the named Defendants, in an extensive opinion that recites all the relevant, uncontroverted facts. Dkt. No. 238, pp. 18–28. There is no need to reiterate those facts here. The reader is referred to the summary judgment decision (Dkt. No. 238) for a statement of undisputed material facts, derived largely from the Securities and Exchange Commission's Rule 56.1 statement (Dkt. No. 185-1), with portions coming from Defendants' Counter-Statement (Dkt. No. 203).

6

## II.    Procedural History

This case was filed on March 2, 2021. Dkt. No. 1. The SEC filed its Complaint against eight defendants — Airborne, Kabilafkas, Tim Kabilafkas, Daniels, Rabin, Bolovis, Chrysiliou, Scheffey — and Relief Defendants TKRT and MKRT.

Defendants Airborne, Kabilafkas, Tim Kabilafkas, Daniels, Bolovis, Scheffey, and Chrysiliou all filed separate Motions to dismiss the Complaint, which were denied. Dkt. No. 103.

The SEC reached settlements with four of the individual Defendants — Rabin, Bolovis, Chrysiliou, and Scheffey. Dkt. No. 22, 147–148, 174.

On November 8, 2022, the SEC filed its Motion for Summary Judgment against the remaining defendants, Kabilafkas, Tim Kabilafkas, Daniels, and Airborne, and Relief Defendants MKRT and TKRT which this Court granted on September 12, 2023. Dkt. No. 238.

On March 15, 2024, the SEC filed its motion requesting that the Court enter an order for final judgment including (1) a permanent injunction restraining and enjoining Defendants from violating Section 10(b) of the Exchange Act and Section 10b-5 thereunder, and Section 17(a) of the Securities Act, (2) a permanent bar against Kabilafkas, Timoleon Kabilafkas, and Daniels from participating in the offering of penny stocks pursuant to Section 21(d)(6) of the Exchange Act and Section 20(g)(1) of the Securities Act, (3) a permanent bar against Daniels from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports under Section 15(d) of the Exchange Act, pursuant to Section 21(d)(2) of the Exchange Act, and (4) imposing disgorgement and pre-judgment thereon, and civil monetary penalties as set forth in the chart above, at *supra* p. 3–4. Dkt. No. 263.

7

## DISCUSSION

**I.**     **The Court Enters a Permanent Injunction Against Defendants enjoining and restraining Defendants Airborne Wireless Network, Kalistratos Kabilafkas, and Timoleon Kabilafkas from violating, or committing future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act.**

Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] and Section 20(b) of the

Securities Act [15 U.S.C. § 77t(b)] authorize this Court to enjoin Defendants from violating, or

committing future violations of, the securities laws. A permanent injunction is appropriate where

there is a substantial likelihood of future violations. *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d

Cir. 1998). In determining whether to issue a permanent injunction, courts consider the following

factors:

> [1] the fact that the defendant has been found liable for illegal
> conduct; [2] the degree of scienter involved; [3] whether the
> infraction is an "isolated occurrence," [4] whether defendant
> continues to maintain that his past conduct was blameless; and [5]
> whether, because of his professional occupation, the defendant
> might be in a position where future violations could be anticipated.

*Id.* at 135. These factors weigh in favor of this Court imposing a permanent injunction on each

Defendant.

*A. The Court Found Defendants Airborne Wireless Network, Kalistratos Kabilafkas, and Timoleon Kabilafkas Liable for Securities Law Violations.*

In regards to the first factor, the Court determined, when deciding the motion for

summary judgment, that Defendants Kabilafkas, Tim Kabilafkas, and Airborne had made

material misrepresentations and omissions in violation of Exchange Act Section 10(b) and Rule

10b-5 and Securities Act Section 17(a)(2). *See* Dkt. No. 238.

8

B. *Defendants Airborne Wireless Network, Kalistratos Kabilafkas, and Timoleon Kabilafkas Acted with a High Degree of Scienter.*

In the Order, the Court also concluded that each Defendant acted with scienter, and that there was no genuine issue of material fact on that score. *See* Dkt. No. 238, pp. 45–49.

The undisputed facts demonstrated that Kabilafkas devised and operated a fraud where, as a control person, he structured numerous deceptive transactions and made a multitude of misleading statements to both investors and the SEC. *See* Dkt. No. 238, pp. 18–28. In *SEC v. Blackout Media Corp.*, 2012 WL 4051937 (S.D.N.Y. May 15, 2012), a Magistrate Judge recommended a permanent injunction where a defendant — who acted as a control person of an entity defendant — structured multiple deceptive transactions and made misleading statements. *Id.* at *6 (recommendation adopted 2012 WL 4051951 (S.D.N.Y. Sep. 14, 2012)). As the control person, Kabilafkas' scienter may also be attributed to Airborne. In *SEC v. CKB168 Holdings, Ltd.*, 2022 WL 3347253, at *3 (E.D.N.Y. Aug. 12, 2022), the Court found that the defendant entity had scienter as it was controlled by the defendant scheme architects, who "used [it] as a means to carry out the scheme."

Meanwhile, Tim Kabilafkas repeatedly knowingly misled brokers to facilitate his son's deceptions and further the scheme. Dkt. No. 238, pp. 48–49. Courts have imposed permanent injunctions on defendant promoters who knew that their claims were false. *See CKB168 Holdings, Ltd.*, 2022 WL 3347253, at *3. Furthermore, Courts may also grant permanent injunctions on defendants who were "fully aware that [they] knowingly and intentionally [were] engaging in fraudulent conduct." *SEC v. Shkreli*, 2022 WL 541792, at *6–8 (E.D.N.Y. Feb. 23, 2022). As such, Defendants Airborne Wireless Network, Kalistatos Kabilafkas, and Tim Kabilafkas all acted with a high degree of scienter.

C.  *Defendants Airborne Wireless Network, Kalistratos Kabilafkas, and Timoleon Kabilafkas' Conduct Was Not Isolated.*

Defendants Kalistatos Kabilafkas and Tim Kabilafkas argue that, because both Kabilafkas and Tim are first time offenders, and the SEC alleges no further violations, this conduct is isolated. Dkt. No. 276, pp. 22–23. However, it was anything but. "Courts in this district have granted permanent injunctive relief… where the fraud scheme at issue was broad in scope, long in duration, and involved a high degree of scienter." *SEC v. Svoboda*, 409 F. Supp. 2d 331, 343 (S.D.N.Y. 2006) (citations omitted). Kabilafkas' scheme took place from 2015 through 2018, during which period Kabilafkas and Tim purchased Airbone, fabricated payments for S-1 shares, obfuscated Kabilafkas' relationship with Airborne, misled brokers, initiated misleading promotional campaigns, and sold shares at inflated prices. *See* Dkt. No. 238, pp. 18–28. Such a scheme certainly qualifies as broad in scope and long in duration. Therefore, the Court finds that Airborne, Kabilafkas, and Tim's conduct was not an "isolated" instance of securities fraud.

D.  *Defendants Airborne Wireless Network, Kalistratos Kabilafkas, and Timoleon Kabilafkas Have Never Taken Responsibility for Their Conduct.*

The SEC argues that Defendants have never admitted their misconduct, Dkt. No. 263, p. 5, relying on Defendant's Brief in Opposition to Summary Judgment (Dkt. No. 202), in which Defendant's zealously defended themselves. Defendants properly note that the SEC mischaracterizes their argument. Dkt. No. 276, p. 23. However, this does not equate to Defendants' accepting the blame for their acts. Still though, Defendants have never actually accepted blame for their misconduct. This factor, too, weighs in favor of an injunction.

E.  *Defendants Airborne Wireless Network, Kalistratos Kabilafkas, and Timoleon Kabilafkas Are in a Position Where Future Violations Can Be Anticipated.*

The SEC maintains that Defendants' sophistication when perpetuating this fraud indicates that future violations can be anticipated. Dkt. No. 263, p. 6. Defendants, meanwhile, argue that there have been no further violations in the past six years and thus, looking forward, there is no likely repetition. Dkt. No. 276, pp. 22–23. Defendants, however, have been under investigation by federal authorities for the past five years, leading to both this matter and an indictment against Kabilafkas and Daniels in the Central District of California. It stands to reason that Defendants would restrain themselves, and would, as far as this Court knows, not commit any further violations while under scrutiny. However, given Kabilafkas' and Tim Kabilafkas' network and sophistication in enacting this fraud, coupled with their lack of remorse, it stands to reason that Defendants are in a position to repeat these violations once they are no longer under federal scrutiny.

F.  *The Second Circuit Allows Injunctive Relief Enjoining and Restraining Defendants from Violating Securities Laws.*

Defendants claim that "in the context of SEC enforcement actions and otherwise, 'obey-the-law' injunctions are unenforceable." Dkt. No. 276, p. 20 (quoting *SEC v. Graham*, 823 F.3d 1357, 1362 n. 2 (11th Cir. 2016)). In doing so, Defendants claim that "These injunctions 'lack specificity and deprive defendants of the procedural protections that would ordinarily accompany a future charge of a violation of the securities laws.'" Dkt. No. 276, pp 20–21 (quoting *Graham*, 823 F.3d at 1362 n. 2). To support this, Defendants cite cases in the Third, Tenth, and Eleventh Circuits.

In the Second Circuit, courts have ruled that "Injunctive relief is expressly authorized by Congress to proscribe future violations of the federal securities laws." *Cavanagh*, 155 F.3d at 135. More recently, courts have held that "injunctive relief that… permanently enjoins defendants from committing future violations of the federal securities laws… is plainly within

11

the SEC's authority." *SEC v. Xia*, 2024 WL 3592170, at *5 (E.D.N.Y. July 26, 2024); *SEC v. Honig*, 2024 WL 3454840, at *12 (S.D.N.Y. July 18, 2024). Defendants argument, therefore, is rejected.

For the foregoing reasons, the Court permanently enjoins Defendants Kalistratos Kabilafkas, Airborne Wireless Network, and Timoleon Kabilafkas from violating, or committing future violations of, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act.

**II.    The Court Enters a Permanent Injunction Against Defendants Kalistratos Kabilafkas and Timoleon Kabilafkas from Participating in an Offering of Penny Stocks.**

Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)] and Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] authorize a district court to impose a penny stock bar against any person participating in, or, at the time of the alleged misconduct, who was participating in, an offering of penny stock." Those Acts define a person participating in an offering of a penny stock as "any person engaging in activities with a[n]… issuer for the purposes of … trading, or inducing or attempting to induce the purchase." Exchange Act § 21(d)(6); Securities Act § 20(g)(2). In determining whether a penny stock bar is appropriate, the court considers: (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur. *SEC v. Universal Express, Inc.*, 475 F.Supp.2d 412, 429–30 (S.D.N.Y. 2007).

*A.    Defendants Engaged in Egregious Securities Fraud.*

As mentioned above, Kabilafkas masterminded and Tim Kabilafkas participated in a scheme that was both broad in scope and long in duration, with numerous transactions and

actors. *See supra* p. 10. In doing so, Kabilafkas impersonated both Tim Kabilafkas and Zernos in

phone calls with interested parties. Dkt. No. 203, ¶¶ 82–89. In *SEC v. Jean-Pierre*, 2015 WL

1054905, at *12–13 (S.D.N.Y. Mar. 9, 2015), the court imposed a penny stock bar on an attorney

who engaged in a scheme to issue a fraudulent attorney opinion letter by, among other things,

impersonating a family member. This is analogous to Kabilafkas' actions of impersonating both

his father and Zernos. Furthermore, in *SEC v. Becker*, 2010 WL 2710613 at *1–2 (S.D.N.Y. Jul.

8, 2010), the court authorized a permanent penny stock bar in a case where the defendants raised

only $1.3 million by fraudulently selling unregistered securities to at least 29 investors over a

period of years. Here, Airborne raised $22.8 million from investors during 2017 and 2018. Dkt.

No. 203, ¶ 120. Therefore, I can easily determine that this qualifies as egregious securities fraud,

which weighs heavily in favor of granting the penny stock bar.

  B.  *Defendants Are Not Repeat Offenders, but Conduct Was Not Isolated.*

  This is Defendants' first known violation of the securities laws. Dkt. No. 276, p. 22.

Therefore, we weigh this against granting the permanent injunction. However, it is not exactly

fair to stay that they are not "repeat offenders," as they engaged in repeated acts of fraud over the

course of three years before they were caught. It thus does not weigh against granting the

injunction.

  C.  *Defendant Kabilafkas Masterminded the Fraud, and Tim Kabilafkas Repeatedly*
      *Participated in the Fraud.*

  As mentioned above, Defendant Kabilafkas masterminded and orchestrated this scheme.

*See* Dkt. No. 238, pp. 18–28. Tim Kabilafkas, meanwhile, obfuscated his knowledge of the

scheme in conversations with Merrill, Dkt. No. 203, ¶ 87, assisted Kabilafkas in impersonating

him to Merrill, *Id.* ¶¶ 88–89, lied to Interactive about where he received the shares, *Id.* ¶¶ 92–93,

and provided a signed letter to Airborne's outside law firm with multiple misrepresentations. *See id.* ¶ 94. This factor weighs heavily in favor of granting the permanent injunction.

### D. Defendants Acted with a High Degree of Scienter.

As mentioned above, both Kabilafkas and Tim Kabilafkas acted with a high degree of scienter. *See supra* p. 9. This factor also weighs in favor of granting the permanent injunction.

### E. Defendants Had a Monetary Stake in the Violation.

Both Defendant Kabilafkas and Tim Kabilafkas had a large monetary stake in the violation, with Kabilafkas directing over $18 million in sales of the Airborne S-1 Shares to be kept in both his and Tim Kabilafkas' accounts. Dkt. No. 203, ¶ 117. Therefore, this factor weighs in favor of granting a permanent injunction.

### F. There is a Likelihood the Misconduct Will Recur.

As stated above, *supra* pp. 9–10, both Kabilafkas and Tim Kabilafkas acted with a high degree of scienter to carry out an elaborate plan that was both long in scope and broad in duration. Given both parties' sophistications in carrying out this violation, and their refusal to admit their misconduct and lack of remorse, the Court finds it likely that this misconduct will recur. As such, this factor weighs towards granting the injunction.

### G. Defendant's Arguments Fail to Convince the Court.

Defendants argue that "an expulsion or suspension of a securities broker is a penalty, not a remedy," as it is the "equivalent of capital punishment" to bar an individual from an entire industry. Dkt. No. 276, p. 23 (quoting *Saad v. SEC*, 873 F.3d 297, 305 (D.C. Cir. 2017) (Kavanagh, J., concurring)). The law in the D.C. Circuit is not controlling in the Second Circuit, and a statement in a concurrence is not even the law in its own circuit. Moreover, Defendant agrees that a bar is permissible if the SEC can show that "future misconduct is likely to occur."

Dkt. No. 276, p. 24. The SEC has shown such, so Defendant's arguments fail to convince the Court.

For the foregoing reasons, the Court permanently bars Kabilafkas and Tim Kabilafkas from participating in an offering of penny stocks, including engaging in activities with a broker, dealer or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)] and Section 20(g)(1) of the Securities Act [15 U.S.C. § 78u(d)(2)].

**III.    The Court Orders that Defendants Kalistratos Kabilafkas, Timoleon Kabilafkas, and Airborne Wireless Network, and Relief Defendants TKRT and MKRT Disgorge the Illicit Proceeds of The Securities Violations.**

Courts have the authority to award disgorgement in SEC actions, in order to "deprive violators of their ill-gotten gains." *SEC v. First Jersey Securities Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996); *see also Liu v. SEC*, 591 U.S. 71, 82–86 (2020). The "district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *First Jersey*, 101 F.3d at 1474–75. Disgorgement is calculated by determining "the wrongful gain obtained by the defendant." *SEC v. Govil*, 86 F.4th 89, 103 n.14 and 105 (2d Cir. 2024). The disgorgement amount need only be a "reasonable approximation of profits causally connected to the violation." *SEC v. iFresh, Inc.*, 2024 WL 416709, at *2 (E.D.N.Y. Feb. 5, 2024) (citations and quotations omitted). "Any risk of uncertainty falls on the defendant." *Id.* The Court may also impose disgorgement jointly and severally on "partners engaged in concerted wrongdoing." *Liu*, 591 U.S. at 90.

Defendants argue that, here, disgorgement is inappropriate, as the Supreme Court delineated boundaries between equitable relief and "a penalty outside… equitable powers." Dkt. No. 276, p. 11 (citing *Liu*, 591 U.S. at 82). In doing so, Defendants argue that "equity requires: (1) any disgorgement amount may not exceed the pecuniary gain obtained by the wrongdoer; (2)

any disgorgement amount awarded to a victim may not exceed the pecuniary harm suffered by that victim; and (3) both the pecuniary gain obtained by the wrongdoer and the pecuniary loss suffered by the victim must have resulted from the securities law violation." Dkt. No. 276, p. 11 (citing *Liu*, 591 U.S. at 80; *Govil*, 86 F.4th at 103). They argue that disgorging funds greater than the pecuniary harm would be conferring a "windfall" to the plaintiff. Dkt. No. 276, pp. 12–16.

Much of Defendants' argument rests on the recent decision in *SEC v. Ripple Labs Inc.*, 2024 WL 3730403 (S.D.N.Y. Aug. 7, 2024), in which my colleague Judge Torres refused to allow disgorgement absent a showing of specific pecuniary loss on the part of the investors. However, Judge Torres' decision is not binding on this Court. Second Circuit decisions are, however; and the Second Circuit ruled, in *SEC v. O'Brien*, 2024 WL 2813722, at *2 (2d Cir. Jun. 3, 2024), that trading losses caused by deceptive and manipulative conduct satisfy the pecuniary harm requirement. The Second Circuit came to its decision without requiring the SEC to submit specific data and calculations showing investor losses. *Id.* In the Eastern District, my colleague Judge Ross, in *SEC v. iFresh*, 2024 WL 416709, at *3 (E.D.N.Y. Feb. 5, 2024), stated that the allegation that stock prices were artificially inflated satisfied the precondition that investors suffered pecuniary harm.

In this case, the SEC established, with record evidence, that investor losses totaled approximately $51,019,684. Dkt. No. 263, p. 19. The facts here differ from those in *Ripple Labs, Inc.*, so with great respect I decline to apply Judge Torres' reasoning to this case.

Courts impose joint and several liability on defendants engaged in "concerted wrongdoing." *See, e.g., SEC v. Oppenheimer*, 2024 WL 3342098 (S.D.N.Y. Jul. 8, 2024). Kabilafkas, Airborne, and Tim Kabilafkas engaged in concerted wrongdoing, with Kabilafkas acting as control person of Airborne and mastermind of the scheme, and Tim Kabilafkas

16

participating in, encouraging, and benefiting from the securities violations. *See* Dkt. No 238, pp. 18–28.

A.  *The Court Orders Kabilafkas and Airborne to Disgorge $22,768,734 jointly and severally, and Kabilafkas to Disgorge Trading Proceeds of $21,238,796.*

As the control person, Kabilafkas is jointly and severally liable for all $22,768,734 that Airborne unlawfully raised from investors. *See* Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a); *First Jersey*, 101 F.3d at 1475–76. He had the power to control Airborne's actions and repeatedly acted on its behalf. *See* Dkt. No. 238, pp. 18–28; *see SEC v. Johnson*, 43 F.4th 382, 390–391 (4th Cir. 2022). Kabilafkas is jointly and severally liable even where he did not assume direct control or possession of Airborne's illicit proceeds. *First Jersey*, 101 F.3d at 1475–76. Airborne funds that Kabilafkas personally misappropriated are not the only assets that he can be ordered to disgorge. *See FTC v. Shkreli*, 581 F.Supp.3d 579, 642 (S.D.N.Y. 2022). As shown above, Kabilafkas controlled Airborne, used more than $11 million to fund promotional efforts to artificially inflate Airborne's stock price, and spent at least $3 million on a product Kabilafkas knew had no actual value. *See* Dkt. No. 238, pp. 18–28. A "person who controls the distribution of illegally obtained funds is liable for the funds he or she dissipated as well as the funds he or she retained." *SEC v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1098 (9th Cir. 2010); *see also SEC v. Tourre*, 4 F.Supp.3d 579, 590 (S.D.N.Y. 2014). As the director of the distribution of funds Airborne raised from investors, Kabilafkas may be disgorged of every investor dollar Airborne brought in, totaling $22,768,734.

In addition, as the architect of the fraud, he should be ordered to disgorge all $21,239,053 that the "pump-and-dump" generated. *See, e.g., CKB168 Holdings*, 2022 WL 3347253 at *4. District Courts have calculated disgorgement as "the difference between sale and purchase prices in fraudulent transactions." *SEC v. Ahmed*, 72 F.4th 379, 397 (2d Cir. 2023). As Kabilafkas

acquired the S-1 Shares without using any of his own money, his cost basis was zero and the sales proceeds were pure profit. *See SEC v. Lines*, 2011 WL 3611350, at *4–5 (S.D.N.Y. Jun. 7, 2011). The SEC concedes that the penalty imposed against Kabilafkas should be reduced by $257, the amount obtained by Kabilafkas via the sale of Ample-Tee shares in a nominee account in October 2015, which is beyond the limitations period. Dkt. No. 279, p. 9. Therefore, Kalistratos Kabilafkas should be ordered to disgorge trading proceeds of $21,238,796.

For the foregoing reasons, Kalistratos Kabilafkas and Airborne are ordered to disgorge $22,768,734 jointly and severally, and Kalistratos Kabilafkas is ordered to disgorge trading proceeds of $21,238,796.

B. *The Court Orders Timoleon Kabilafkas to Disgorge $13,720,303.*

Tim Kabilafkas violated Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act. Dkt. No. 238, pp. 40, 50. In doing so, he engaged in concerted wrongdoing with Kabilafkas by deceiving brokers through impersonation and misrepresentations, allowing his son to trade in his accounts, and maintaining accounts — both in his individual capacity and as trustee of the TKRT — that he and his son used to distribute and receive illicit proceeds. *See id.* Therefore, Tim Kabilafkas should be ordered to disgorge $13,720,303 in illicit trading proceeds jointly and severally with Kabilafkas. I accept the SEC's total and methodology as listed in Dkt. No. 263, pp. 16–17.

C. *The Court Orders Timoleon Kabilafkas, in His Capacity of Trustee of the TKRT, to Have the TKRT Disgorge $11,031,144.*

The Court found that the TKRT received illicit proceeds to which it had no legitimate claim. *See* Dkt. No. 238. Kabilafkas and Tim Kabilafkas used at least some of those funds to purchase millions of dollars' worth of real estate in TKRT's name. *See id.* The Court accepts the SECs total, and orders Tim Kabilafkas, in his capacity as the TKRT's trustee, to disgorge

$11,031,144 from the TKRT, jointly and severally with Kabilafkas and with himself in his

individual capacity for the total amount, and jointly and severally with Airborne for $103,320.

D. *The Court Orders Magdaline Kabilafkas, in Her Capacity as Trustee of the MKRT, to Have the MKRT Disgorge $265,000.*

Relief Defendant MKRT received illicit proceeds to which it had no legitimate claim. *See*

Dkt. No. 238, p. 52. Specifically, the IOLTA account that received illicit trading proceeds

transferred $265,000 to a real estate escrow company to partially fund the MKRT's purchase of

real property. Dkt. No. 263-1, ¶ 14. Therefore, the Court orders Magdaline Kabilafkas to

disgorge $265,000 from the MKRT.

**IV.    The Court Orders Defendants to Pay Pre-judgment Interest on Their Illicit Gains.**

"Since the primary purpose of disgorgement … is the deprive violators of their ill-gotten

gains, … it is within the discretion of a court to award pre-judgment interest on the disgorgement

amount for the period during which a defendant had the use of his illegal profits." *SEC v.

Razmilovic* ,738 F.3d 14, 36 (2d Cir. 2013) (citations and quotations omitted). "[T]he Second

Circuit has approved the calculation of pre-judgment interest at the IRS underpayment rate."

*SEC v. Tavella*, 77 F. Supp. 3d 353, 360 (S.D.N.Y. 2015) (quoting *First Jersey*, 101 F. 3d at

1476). The Court accepts the SEC's methodology, calculating pre-judgment interest for the

period from May 31, 2018 — the last day of the month the Complaint alleges the scheme ended

— until March 15, 2024, the date the SEC submitted its calculations to the Court. Dkt. No. 263,

p. 21. For the funds Airborne unlawfully raised from investors, the SEC used the period August

31, 2019 — the last day of the last fiscal year in which airborne sold stock – through today.

Defendants' argument that pre-judgment interest is inappropriate relies on the premise

that disgorgement is inappropriate. Dkt. No. 276 p. 24. As shown above, *supra* pp. 15–17,

disgorgement is appropriate. Thus, this Court may order Defendants to pay pre-judgment interest.

**V.    The Court Orders Third-Tier Penalties Against Defendants.**

"Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act provide three tiers of civil penalties for securities law violations." *SEC v. Gallison*, 2023 WL 8813637, at *2 (S.D.N.Y. Aug. 8, 2023) (citing the statutes). Courts may impose a third-tier penalty where the conduct involved fraud and "the violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Razmilovic*, 738 F. 3d at 38. The penalty amount "shall not exceed *the greater of* a specified [statutory] monetary amount or the defendant's gross amount of pecuniary gain." *Id.* (emphasis in original). The specified statutory penalties may be applied "per violation." *Id.*

Courts have discretion to determine the appropriate penalty, including what constitutes a discrete "violation." *SEC v. Fowler*, 6 F.4th 255, 265 (2d Cir. 2021). The Court has discretion in setting the penalty amount, which may include "treat[ing] each fraudulent transaction as a discrete violation." *SEC v. Lek Securities Corp.*, 612 F. Supp. 3d 287, 295–96 (S.D.N.Y. 2020). In setting the penalty amount, courts may consider: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses … to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated … financial condition." *SEC v. Rajaratnam*, 918 F. 3d 36, 44 (2d Cir. 2019).

As stated above, Defendants conduct was egregious, had a high degree of scienter, created substantial losses to other persons, and recurred for years as the scheme went on. *See* Dkt. No. 238, pp. 18–28. As Defendants still control a vast amount of the profits earned through

their scheme, all factors weigh in favor of granting civil penalties. The Court accepts the SEC's

calculation of the civil penalties, as shown in Dkt. No. 263, p. 23.

For the foregoing reasons, the Court orders Defendants Kabilafkas, Airborne, and Tim

Kabilafkas to pay civil penalties as set forth in the Final Judgment that will be entered by the

court.

**VI.     The Court Reserves Judgment on the SEC's Motion for Final Judgment as it
        Pertains to Jack Edward Daniels.**

With regards to Daniels, the SEC asks this Court to: (a) enter permanent injunctive relief;

(b) bar Daniels from serving as an officer/director of a public company; (c) bar Daniels from

participating in the offer or sale of penny stocks; and (d) impose a civil monetary penalty in the

amount of $230,464. *See* Dkt. No. 264, pp. 4–7, 22–23.

On April 30, 2024, an indictment was filed against Daniels and Defendant Kalistratos

Kabilafkas in a parallel criminal proceeding brought by the United States Attorney's Office for

the Central District of California captioned *United States v. Kabilafkas*, 24-CR-000270 (C.D.

Cal.) (the "Criminal Action"). Defendant Daniels states that he cannot fully defend himself here

without waiving his Fifth Amendment Rights.

A district court may stay a civil proceeding pending the resolution of a parallel criminal

proceeding. A district court may stay a civil action during the pendency of related criminal

proceedings, although "the Constitution rarely, if ever, requires such a stay." *Louis Vuitton

Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 98 (2d Cir. 2012) (citing *Kashi v. Gratsos*, 790 F.2d

1050, 1057 (2d Cir. 1986)). To determine whether to grant a stay, courts in the Second Circuit

consider the following factors:

> (1) The extent to which the issues in the criminal case overlap with those presented
> in the civil case; (2) the status of the case including whether the defendants have
> been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously
> weighed against the prejudice to plaintiffs caused by the delay; (4) the private

21

interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*Louis Vuitton*, 676 F.3d at 99. Here, going factor by factor: (1) the issues in the criminal case are identical to those in the civil action; (2) Daniels has been indicted; (3) the SEC would not be burdened by a delay; (4) Daniels has a significant interest in not incriminating himself; (5) the court has no material interest in immediate pursuit of a judgment against Daniels; and (6) the public has a strong interest in ensuring that securities laws are enforced. I conclude that the *Louis Vuitton* factors weigh slightly in favor of reserving judgment as it pertains to Defendant Daniels, pending resolution of the parallel criminal proceeding. While the government also indicted Defendant Kalistratos Kabilafkas, he made no argument that this proceeding be stayed so that he could exercise his Fifth Amendment rights. *See* Dkt. No. 276.

## CONCLUSION

For the foregoing reasons, the SEC's Motion for Final Judgment is GRANTED as it pertains to Defendants Kalistratos Kabilafkas, Airborne Wireless Network, and Timoleon Kabilafkas, as well as Relief Defendants Timoleon Kabilafkas in his capacity as trustee of the Tim Kabilafkas Revocable Trust Dated July 24, 2001, and Magdaline Kabilafkas, in her capacity as trustee of the Magdaline Kabilafkas 1989 Trust Dated May 27, 1989.

The Court enters a permanent injunction enjoining and restraining Defendants Kalistratos Kabilafkas, Airborne Wireless Network, and Timoleon Kabilafkas from violating, or committing future violations of, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act.

The Court enters a permanent injunction barring Defendants Kalistratos Kabilafkas, Airborne Wireless Network, and Timoleon Kabilafkas from participating in an offering of penny

stocks, including engaging in activities with a broker, dealer or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6) and Section 20(g)(1) of the Securities Act [15 U.S.C. § 78u(d)(2)].

Judgment shall be entered against Kalistratos Kabilafkas in the amount of $44,007,530 in disgorgement, $12,438,514 in pre-judgment interest, and $21,239,053 in civil penalties. Joint and several liability shall be imposed on the disgorgement and pre-judgment interest with: (1) Airborne Wireless Network for $22,768,734; (2) Timoleon Kabilafkas in his individual capacity for $13,720,303; (3) Tim Kabilafkas in his capacity as trustee to the TKRT for $11,031,144; and (4) Magdaline Kabilafkas in her capacity as the trustee to the MKRT for $265,000.

Judgment shall be entered against Airborne Wireless Network in the amount of $22,768,734 in disgorgement, $5,488,855 in pre-judgment interest, and $1,152,314 in civil penalties. Joint and several liability shall be imposed on the disgorgement and pre-judgment interest with: (1) Kalistratos Kabilafkas for the full amount; and (2) Tim Kabilafkas in his capacity as trustee to the TKRT for $103,320.

Judgment shall be entered against Timoleon Kabilafkas in his individual capacity in the amount of $13,720,303 in disgorgement, $4,489,438 in pre-judgment interest, and $460,928 in civil penalties. Joint and several liability shall be imposed on the disgorgement and pre-judgment interest with (1) Kalistratos Kabilafkas for the full amount; and (2) Timoleon Kabilafkas in his capacity as the trustee to the TKRT for $11,031,144.

Judgment shall be entered against Relief Defendant Timoleon Kabilafkas in his capacity as the trustee to the TKRT in the amount of $11,031,144 in disgorgement and $3,609,515 in pre-judgment interest. Joint and several liability shall be imposed on the disgorgement and pre-

judgment interest with: (1) Kalistratos Kabilafkas and Timoleon Kabilafkas for the full amount; and (2) Airborne Wireless Network for $103,320.

Judgment shall be entered against Relief Defendant Magdaline Kabilafkas in her capacity as the trustee to the MKRT in the amount of $265,000 in disgorgement and $86,711 in civil penalties. Joint and several liability shall be imposed on the disgorgement and pre-judgment interest with Kalistratos Kabilafkas for the full amount.

The Court reserves judgment on the SEC's Motion for Final Judgment and this action is STAYED as it pertains to Defendant Jack Edward Daniels until the conclusion of the parallel criminal action *United States v. Kabilafkas*, 24-CR-000270 (C.D. Cal.).

The Clerk of Court is respectfully directed to remove the open motion at Dkt. No. 262.

This is the opinion of the court. It is a written decision.

Dated: December __, 2024
*November 24*

_____
U.S.D.J

BY ECF TO ALL COUNSEL

24