**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

    -against-

AIRBORNE WIRELESS NETWORK, et al.,

                           Defendants,

    -and-

TIM KABILAFKAS, in his capacity as trustee of the
TIM KABILAFKAS REVOCABLE TRUST
DATED JULY 24, 2001, AND MAGDALINE
KABILAFKAS, in her capacity as trustee of the
MAGDALINE KABILAFKAS 1989 TRUST
DATED MAY 27, 1989,

                       Relief Defendants.

No. 21 Civ. 1772 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/7/2026

---

ORDER DENYING IN PART AND STAYING IN PART PROCEEDINGS ON MOTION
FOR AN INDICATIVE RULING

McMahon, J.:

    I have been asked to provide an Indicative Ruling that, were this case to be remanded from the Second Circuit (where it is presently pending), I would vacate my order granting the SEC's motion for summary judgment against Kalistratos Kabilafkas, Timoleon Kabilafkas, and the Relief Defendants. It is my understanding (although the briefing is surprisingly thin for a case this old and this complex) that Defendants believe that information contained in two sets of notes taken during witness interviews conducted by the SEC cast doubt on the court's ultimate conclusion, which was that there is no genuine issue of fact concerning Kalistratos Kabilafkas' control over Airborne during the relevant time period.

Specifically, the movants argue that (i) the interview notes of Gary Rasmussen contain evidence that 52% of the shares of a company called Apcentive – Airborne's principal shareholder -- were owned in 2017 by someone name Lai, not by Kabilafkas; and (ii) the interview notes of Michelle Janshen, Airborne's transfer agent, contain evidence that Jack Daniels, the nominal CEO of Airborne, exercised control over the affairs of the company based on her dealings with him. There is also mention of a "Whistleblower Report" in the moving papers, but we cannot locate that report among the exhibits filed in support of the motion, so I have no idea what it says.

At the present time it is highly doubtful whether this court would grant the motion. I will most certainly not do so on the basis of the Janshen interview notes, which record only her perceptions about Daniels' role based on her dealings with him.  Janshen's statements about her interactions with Daniels in her role as the company's outside transfer agent cast no light whatsoever on whether Kabilafkis was actually pulling Daniels' strings, as hypothesized by the SEC. The notes also do not disclose any facts tending to show that Janshen was in any position to perceive whatever behind the scenes machinations may have been going on at Airborne; for that reason alone, her outsider's perceptions about who was really running the show fail to give rise to any genuine issue of fact that would cause this court to reconsider its prior ruling. This conclusion is reinforced by admissions made by Daniels in connection with his recent guilty plea in a criminal matter pending against him in the Central District of California[1]– admissions that confirm the SEC's theory that Kabilafkis controlled Airborne's affairs, despite Daniels' being held out publicly as the face of the company (see Dkt. No. 306 at 8-9).

---

[1] This plea was entered after the court granted the SEC's motion for summary judgment. That task would have been considerably easier if Daniels had already taken his plea and made his admissions, which prove the Commission's theory of the case.

2

In short, nothing in the Janshen notes about her perceptions casts the slightest doubt on the correctness of the original award of summary judgment.

I cannot rule on the motion insofar as it relies on the Rasmussen notes because, frankly, I do not know enough about those notes, and the person making the statements, to form any sort of opinion. However, in order to conserve this court's resources, I decline to address the motion on the merits insofar as it relates to the Rasmussen notes at this time.[2] I am placing this matter on my suspense calendar, where it will remain until the Department of Justice finishes producing documents in response to Rule 16 and *Brady* orders handed down by my colleague in the Central District of California in the criminal matter presently pending in that court against Kalistratos Kabilafkas. When all documents that are going to be produced in the criminal proceeding have been produced, the parties are free to ask me to remove the case from my suspense docket and to submit any additional materials or arguments that they might wish me to consider – assuming there is still interest in obtaining an indicative ruling on this basis.

In any such briefing, the movants must identify (individually) any and every material fact found by this court either to have been admitted or effectively admitted (due to the Defendants' failure to comply with Local Rule 56.1) that it believes the Rasmussen notes undermine. They must also explain precisely what statements in those notes contradict said facts, and how. Since the only issue that I understand to be controverted by the Rasmussen notes relates to Kabilafkas's purported control over Airborne by virtue of the ownership of shares in

---

[2] I am aware that the Second Circuit has recently declined an effort by Kabilafkis to stay the proceedings before me. See mandate, Dkt. No. 315. That ruling has no impact on my control of my own calendar. I am perfectly free to stay the matter myself. Since I do not wish to have yet another such motion made, and since the movants insist that documents presently being produced in California will lend further support to their position, I will simply wait for that process to play itself out.

Apcentive – specifically, the movants' insistence that someone named Lai, rather than Kabilafkas, controlled Airborne by virtue of his ownership of those shares -- I suggest that Defendants concentrate their efforts on the 18 "Control Group of Counterstatements" that are listed at pages 11-12 of the court's September 12, 2023 decision.

I remind the parties that I granted the SEC's motion for summary judgment two and one half years ago. You may have been living with this case ever since, but I have been busy with many other things. I cannot decide your motion on the basis of short, conclusory briefs that presume more knowledge than I presently have and handwritten notes that are not self-explanatory. I will not decide the motion in favor of the movants simply because the SEC failed to produce these interview notes during discovery. I have rereads the original 2023 decision; it does not contain the words "Lai" or "Rasmussen." I do not even remember (if indeed I ever knew) who "Rasmussen" and "Lai" are, let alone how they might relate to the Airborne enterprise. Without that information I could not possibly opine on whether the Rasmussen notes raise some genuine issue of fact that could not have been raised three years ago. I have no intention of revisiting the extensive record that was placed before me back then in order to see if there is some references to these people somewhere in that record. If Kabilafkas wants to convince me that there is now reason to question a decision reached long ago about whether he secretly controlled Airborne, then he needs to explain why I should do that in considerably more detail than is presently the case.

Additionally, I will need to understand why it is that Kabilafkas was unaware, until the SEC produced Rasmussen's notes, that someone other than he (or perhaps a person controlled by him) owned a majority of the shares of Apcentive. I assume a businessman of Mr. Kabilakfas's experience knows what he does and does not own. I recognize that Kabilafkas may be unable to

4

offer any explanation because he is presently pleading the Fifth Amendment, but that decision – rational though it may be – has consequences for his present motion.

I also remind the movants that they must deal with their own failure to abide by Local Rule 56.1 when the summary judgment motion was originally decided. The moving papers are, as the Commission notes, bereft of any reference to the issue of facts that were "deemed admitted" when the motion was decided by virtue of movants' own failures in the first instance.

Finally, as I previously noted, we cannot find any record that something called the "Whistleblower Report" has been filed as part of the record on this motion, even under seal. If such a report is part of the reason why an indicative ruling is sought, you should tell me where I can find it.

Let me know if and when you are ready to proceed.

Dated: April 7, 2026

U.S.D.J.

BY ECF TO ALL COUNSEL